**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**26-CR-80124-ARTAU/REINHART**
Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 2
18 U.S.C. § 982(a)(7)

**UNITED STATES OF AMERICA**

v.

**RAJIV SHAH,**

　　　　　**Defendant.**

_____/

FILED BY_____ BM _____D.C.

Jun 18, 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare.

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Individuals who qualified for Medicare benefits were commonly referred to as

"beneficiaries." Each Medicare beneficiary was given a unique Medicare identification number.

4.     Medicare covered different types of benefits, which were separated into different program "parts." Medicare Part B covered, among other things, medical services provided by physicians, medical clinics, laboratories, and other qualified health care providers, such as office visits, minor surgical procedures, durable medical equipment ("DME"), and laboratory testing, that were medically necessary and ordered by licensed medical doctors or other qualified health care providers.

5.     Health care providers, such as DME suppliers, that provided and supplied items and services to Medicare beneficiaries were referred to as "providers." Providers were able to apply for and obtain a "provider number." Providers that received a Medicare provider number were able to file claims with Medicare to obtain reimbursement for benefits, items, and services provided to beneficiaries.

6.     When seeking reimbursement from Medicare for provided benefits, items, and services, providers submitted the cost of the benefit, item, or service provided together with a description and the appropriate "procedure code," as set forth in the Current Procedural Terminology ("CPT") Manual. Additionally, claims submitted to Medicare seeking reimbursement were required to include: (a) the beneficiary's name and Health Insurance Claim Number or Medicare Beneficiary Identifier; (b) the date on which the benefit, item, or service was provided or supplied to the beneficiary; and (c) the name of the provider, as well as the provider's unique identifying number, known either as the Unique Physician Identification Number or National Provider Identifier. Claims seeking reimbursement from Medicare could be submitted in hard copy or electronically via interstate wires.

7.     Medicare would only pay for items and services that were medically reasonable

and necessary, eligible for reimbursement, and provided as represented. Medicare would not pay claims for items and services that were procured through the payment of illegal kickbacks and bribes.

## Medicare Part B

8.     CMS acted through fiscal agents called Medicare administrative contractors ("MACs"), which were statutory agents for CMS for Medicare Part B. The MACs were private entities that reviewed claims and made payments to providers for services rendered to beneficiaries. The MACs were responsible for processing Medicare claims arising within their assigned geographic area, including determining whether the claim was for a covered service.

9.     To receive Medicare reimbursement, providers had to apply to the MAC and execute a written provider agreement. The Medicare provider enrollment application, CMS Form 855S, was required to be signed by an authorized representative of the provider. CMS Form 855S contained a certification that stated:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to [the provider]. The Medicare laws, regulations, and program instructions are available through the [MAC]. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal Anti-Kickback Statute…).

10.     CMS Form 855S contained additional certifications that the provider "will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare," and "will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity."

11.     CMS Form 855S also required applicants to disclose to Medicare any individual or organization with an ownership interest, partnership interest, or managing control of a DME supplier. This included: (a) all individuals and organizations with five percent or more of an

3

ownership stake, either direct or indirect, in the DME supplier; (b) all individuals and organizations with a partnership interest in the DME supplier, regardless of the partner's percentage of ownership; (c) all organizations with "managing control" of the DME supplier; and (d) all "managing employees."

12.     CMS Form 855S defined an organization with "managing control" of a DME supplier as "[a]ny organization that exercises operational or managerial control" over the DME supplier, or "conducts the day-to-day operations" of the DME supplier. CMS Form 855S defined "managing employee" as "a general manager, business manager, administrator, director, or other individual who exercises operational or managerial control over, or who directly or indirectly conducts the day-to-day operations" of the DME supplier, "either under contract or through some other arrangement, whether or not the individual is a W-2 employee" of the DME supplier.

13.     Payments under Medicare Part B were often made directly to the provider rather than to the beneficiary. For this to occur, the beneficiary would assign the right of payment to the provider. Once such an assignment took place, the provider would assume the responsibility for submitting claims to, and receiving payments from, Medicare.

14.     Medicare reimbursed DME companies and other health care providers for items and services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare electronically through interstate wires, either directly or through a billing company.

### Durable Medical Equipment

15.     Medicare Part B covered an individual's access to DME, such as off-the-shelf ankle braces, knee braces, back braces, elbow braces, wrist braces, and hand braces (collectively, "braces"). Off-the-shelf braces required minimal self-adjustment for appropriate use and did not

4

require expertise in trimming, bending, molding, assembling, or customizing to fit the individual.

16. A claim for DME submitted to Medicare qualified for reimbursement only if the DME was medically necessary for the treatment of the beneficiary's illness or injury and prescribed by a licensed physician or other qualified health care provider.

17. Medicare typically pays for DME items that are the same or similar to items it previously covered for a beneficiary with in the reasonable useful lifetime of the item only if the item was lost, stolen, irreparably damaged, or due to a change in a beneficiary's condition. If a DME claim is denied as "same or similar," it can be resubmitted for redetermination with documentation to show the item was lost, stolen, or irreparably damaged, or that there was a change in the beneficiary's condition.

### The Defendant and Related Entities and Individuals

18. Defendant RAJIV SHAH was a resident of Palm Beach County, Florida, and the owner and operator of ACC-Q-Data Florida LLC ("ACC-Q") and AVA Medical Supply LLC ("AVA").

19. ACC-Q was a company formed under the laws of Florida with its principal place of business in Palm Beach County, Florida. ACC-Q was a medical billing company that provided medical billing services to DME companies enrolled in Medicare.

20. AVA was a company formed under the laws of Florida with its principal place of business in Palm Beach County, Florida. AVA was a medical supply company that shipped DME to beneficiaries to fill orders for DME companies and others.

21. Co-conspirator 1 was a resident of India and an employee of ACC-Q and AVA.

22. Kenneth Chrysostome ("Chrysostome") was a resident of Osceola County, Florida, and owned and controlled KC Med Supplies LLC ("KC Med").

5

23.     Ma Gracia Cadet ("Cadet") was a resident of Osceola County, Florida, and owned and controlled KGA Medical Supply LLC ("KGA Med") and Sapphire Medical Supply LLC ("Sapphire").

24.     Peter Roussonicolos ("Roussonicolos") was a resident of St. Lucie County, Florida, and a beneficial owner of Med Braces and Supplies LLC ("Med Braces") and A to Z Med Braces, Inc. ("A-Z").

25.     Co-conspirator 2 owned and controlled GC Med Supplies LLC ("GC Med") and Palm Beach Med Supplies LLC ("Palm Beach Med").

26.     Eric Ginsberg ("Ginsberg") owned and controlled Coast 2 Coast Medical Supplies, LLC ("Coast 2 Coast"), South Shore Medical Supplies, LLC ("South Shore"), and other DME companies with their principal places of business in Palm Beach County, Florida.

27.     Christopher Rascionato owned and controlled North Shore Medical Supplies, LLC ("North Shore"), Sunshine DME Supplies, LLC ("Sunshine"), and other DME companies with their principal places of business in Broward County, Florida.

28.     Marco Antonio Rosas Scamarone was a resident of Broward County, Florida and was the beneficial owner of Stone Oak Durable Medical Equipment LLC ("Stone Oak").

29.     KC Med, KGA Med, Sapphire, Med Braces, A-Z, GC Med, Palm Beach Med, Coast 2 Coast, North Shore, South Shore, and Stone Oak (collectively, the "DME Companies") were DME suppliers that purportedly provided braces to Medicare beneficiaries. Chrysostome, Cadet, Roussonicolos, Ginsberg, Rascionato, Scamarone, and Co-conspirator 2 (collectively, the "DME Owners") were the beneficial owners, operators, and/or managers of the DME Companies.

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around June 2019, and continuing through in or around December 2025, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**RAJIV SHAH,**

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with the DME Owners and others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

 a. to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

 b. to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, to knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce,

7

certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

3.       It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) obtaining Medicare beneficiary referrals and doctors' orders for DME through fraudulent means, including through kickbacks and bribes; (b) submitting and causing the submission, via interstate wire communications, of false and fraudulent claims to Medicare, including through the DME Companies, for DME that was medically unnecessary and ineligible for reimbursement; (c) concealing and causing the concealment of false and fraudulent claims to Medicare; and (d) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the conspiracy.

## Manner and Means

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things:

4.       The DME Owners and others formed, purchased, and controlled DME companies, including the DME Companies, and enrolled the DME Companies with Medicare for the purpose of submitting false and fraudulent claims to Medicare and sought out **RAJIV SHAH** to provide billing services, advice, assistance, and in some instances, drop-shipping of DME supplies.

5.       **RAJIV SHAH** consulted and advised the DME Owners and others on how to best structure and operate their DME companies in a fraudulent manner to maximize profit while avoiding detection from Medicare and law enforcement. His advice included, among other things: (1) instructing the DME Owners to cease purchasing doctors' orders from certain marketers who had high denial rates; (2) limiting the volume of billing through each DME company; (3) halting

shipments for orders that would not be paid by Medicare because Medicare had already paid for a "same or similar" item for the Medicare beneficiary; and (4) spreading the billing to Medicare across multiple DME companies to give the appearance of a lower volume of billing.

6. The DME Owners and other co-conspirators paid illegal kickbacks and bribes to obtain Medicare beneficiary referrals and employed deceptive telemarketing campaigns to trick or coerce elderly Medicare beneficiaries into agreeing to accept DME that they did not want or need.

7. The DME Owners and other co-conspirators fraudulently obtained signed doctors' orders for the DME by either (1) connecting the beneficiaries with telemedicine doctors who were not their treating physicians and did not perform an examination before ordering the DME, or (2) through a fraudulent tactic referred to as "doc chase," which involved faxing a misleading order to the beneficiary's primary care physician to trick the physician into signing the order.

8. The DME Owners and other co-conspirators provided the fraudulently obtained doctors' orders for DME to **RAJIV SHAH** who, through his billing company ACC-Q, submitted claims to Medicare, including for the DME Companies. **RAJIV SHAH** collected a percentage of the Medicare reimbursements in return for his services.

9. **RAJIV SHAH** advised and assisted the DME Owners, among others, in handling Medicare's frequent denials of the fraudulent claims for DME he submitted for their companies, which included, among other things, (1) directing them to other marketers, (2) changing the billing codes, (3) pulling out of certain states with high denial rates, (4) advising them as to which doctors to use on doctor's orders and (5) shifting from telemedicine to "doc chase."

10. **RAJIV SHAH** and his co-conspirators submitted and caused the submission on behalf of the DME Companies of more than $64 million in false and fraudulent claims to Medicare, via interstate wire communications, for DME that was medically unnecessary and ineligible for

9

reimbursement. Medicare paid the DME Companies over $23 million for these claims. The DME Companies paid **RAJIV SHAH** a percentage of the reimbursements they received from Medicare totaling approximately $1.127 million from in or around June 2019 through in or around December 2025.

11.     **RAJIV SHAH** arranged for some of the DME Owners to use his company, AVA, to provide the drop shipping for some of the DME products, for an additional fee.

12.     **RAJIV SHAH** and his co-conspirators used the fraud proceeds received from Medicare to benefit themselves and others, and to further the conspiracy.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2–4
### Health Care Fraud
### (18 U.S.C. § 1347)

1.     The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     From in or around June 2019, and continuing through in or around December 2025, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**RAJIV SHAH,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program.

10

### Purpose of the Scheme and Artifice

3.      The Purpose section of Count 1 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the purpose of the scheme and artifice.

### The Scheme and Artifice

4.      The Manner and Means section of Count 1 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution or Attempted Execution of the Scheme and Artifice

5.      On or about the dates specified below as to each count, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant, **RAJIV SHAH**, did knowingly and willfully execute, and attempt to execute, and aid and abet the execution of, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, in that the defendant submitted and caused the submission of false and fraudulent claims, seeking the identified dollar amounts, and falsely represented that such benefits, items, and services were medically necessary, eligible for Medicare reimbursement, and provided to beneficiaries as claimed:

| Count | Medicare Beneficiary | Billing DME Company | Approx. Claim Date | Claim Numbers | Description of Item Billed | Total Approx. Amount Billed |
|-------|----------------------|---------------------|--------------------|---------------|----------------------------|-----------------------------|
| 2 | J.M. | KC Med | 2/9/2023 | 123041737669000<br>123041737677000<br>123041737679000<br>123041737680000 | L3916 Wrist Brace<br>L3916 Wrist Brace<br>L3761 Elbow Brace<br>L3761 Elbow Brace | $2,896.78 |

| Count | Medicare Beneficiary | Billing DME Company | Approx. Claim Date | Claim Numbers | Description of Item Billed | Total Approx. Amount Billed |
|-------|---------------------|---------------------|--------------------|---------------|----------------------------|------------------------------|
| 3 | K.A.S. | Stone Oak | 11/24/2022 | 122332793464000<br>122332793470000<br>122332793471000<br>122332793473000<br>122332793474000<br>122332793476000 | L3916 Wrist Brace<br>L3916 Wrist Brace<br>L1852 Knee Brace<br>L1852 Knee Brace<br>L2397 Suspension Sleeve<br>L2397 Suspension Sleeve | $3,562.58 |
| 4 | L.G. | Sapphire | 2/23/2023 | 123055725653000<br>123055725678000<br>123055725680000<br>123055725697000<br>123055725698000<br>123055725700000 | L1852 Knee Brace<br>L1852 Knee Brace<br>L3916 Wrist Brace<br>L3916 Wrist Brace<br>L2397 Suspension Sleeve<br>L2397 Suspension Sleeve | $3,917.92 |

In violation of Title 18, United States Code, Sections 1347 and 2.

12

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 982(a)(7))

1.     The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for alleging criminal forfeiture to the United States of America of certain property in which the defendant, **RAJIV SHAH**, has an interest.

2.     Upon conviction of a violation of Title 18, United States Code, Sections 1349 or 1347, as alleged in this Indictment, the defendant shall forfeit to the United States of America any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violation pursuant to Title 18, United States Code, Section 982(a)(7).

3.     The property directly subject to forfeiture as a result of the alleged offenses includes, but is not limited to, the following: a forfeiture money judgment in the sum that represents the value of any property that constitutes or is derived from gross proceeds traceable to the defendant's commission of the offense.

4.     If any of the property is subject to forfeiture, as a result of any act or omission of the defendant:

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p). Such property includes, but is not limited to:

13

    i.     Real property located at 8702 Native Dancer Road North, Palm Beach Gardens, Florida 33418;

    ii.    Real property located at 5216 Misty Morn Road, Palm Beach Gardens, Florida 33418;

    iii.   Real property located at 312 Lake Frances Drive, West Palm Beach, Florida 33411; and

    iv.   Real property located at 8992 Lakes Boulevard, West Palm Beach, Florida 33412.

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures outlined at Title 21, United States Code, Section 853, as made applicable by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

LORINDA LARYEA, CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

JODY KING
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

14

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

**CASE NO.** __26-CR-80124-ARTAU/REINHART__

v.

RAJIV SHAH,

**CERTIFICATE OF TRIAL ATTORNEY**

_____ /
Defendant.

**Superseding Case Information:**

New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total Number of New Counts _____

**Court Division** (select one)

☐ Miami  ☐ Key West  ☐ FTP
☐ FTL  ☒ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.

3. Interpreter: (Yes or No) __No__
   List language and/or dialect:_____

4. This case will take __6-10__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)              (Check only one)
   I    ☐ 0 to 5 days            ☐ Petty
   II   ☒ 6 to 10 days           ☐ Minor
   III  ☐ 11 to 20 days          ☐ Misdemeanor
   IV   ☐ 21 to 60 days          ☒ Felony
   V    ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) __No__
   If yes, Judge _____ Case No._____

7. Has a complaint been filed in this matter? (Yes or No) __No__
   If yes, Judge_____ Magistrate Case No._____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) __Yes__
   If yes, Judge _____ Case No. __SEE ATTACHED__

9. Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) __No__

13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) __No__

14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? __No__

15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? __No__

16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? __No__

17. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? __No__

By: _____
JODY KING
DOJ Trial Attorney
SDFL Court ID No.    A5503424

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: _____ **RAJIV SHAH** _____

Case No: _____

Count #:   1

Title 18, United States Code, Section 1349

Conspiracy to Commit Health Care Fraud and Wire Fraud
* **Max. Term of Imprisonment:   20 years**
* **Mandatory Min. Term of Imprisonment (if applicable):   N/A**
* **Max. Supervised Release:   3 years**
* **Max. Fine:   $250,000 or twice the gross gain or loss from the offense**

Counts #:   2 – 4

Title 18, United States Code, Section 1347

Health Care Fraud
* **Max. Term of Imprisonment:   10 years as to each count**
* **Mandatory Min. Term of Imprisonment (if applicable):   N/A**
* **Max. Supervised Release:   3 years**
* **Max. Fine:   $250,000 or twice the gross gain or loss from the offense**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NUMBER: **26-CR-80124-ARTAU/REINHART**

### **BOND RECOMMENDATION**

DEFENDANT:   RAJIV SHAH

$500,000 PSB

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By:   _Jody King_
AUSA:   DOJ ATTORNEY JODY KING _by Sally Molloy_

Last Known Address: _____

_____

_____

What Facility:   _____

_____

Agent(s):   SA Jason Lanfersick, HHS-OIG
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)
SA Raneisha Lamar, FBI